**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** | |
| **Plaintiff,** | **Civil Action No: 1:14-cv-9262** |
| **v.** | |
| **THOMAS GILLONS,** | **Hon._____** |
| **Defendant.** | |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

The U.S. Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, hereby alleges as follows:

## I.   INTRODUCTION

1.      Between at least August 31, 2013 and the present (the "relevant time period"), defendant Thomas Gillons ("Gillons") fraudulently solicited and accepted at least $194,000 from at least three individuals, used only a portion of those funds to trade commodity futures in his own personal account, and misappropriated the rest.

2.      When soliciting and accepting funds, Gillons misrepresented to prospective and actual customers that he was a licensed broker and would trade their funds at "AMP Clearing" in a sub-account titled in their names, producing a 12-14% return.

3.      In reality, Gillons was not a licensed broker, and during the relevant time period, he transferred only approximately $108,330 to a trading account in his own name at AMP Global Clearing, LLC ("AMP"), a registered futures commission merchant ("FCM") located in Chicago, Illinois, where he lost approximately $55,234 trading commodity futures contracts during the

relevant time period. He returned only approximately $9,000 in funds to two of the individuals from whom he accepted funds. He misappropriated the remaining $129,766 of the at least $194,000 funds he received and used them for his own personal expenses.

4.      Furthermore, by accepting money from at least three individuals to margin, guarantee, or secure commodity futures trades, Gillons acted as an FCM without being registered with the Commission, escaping regulatory scrutiny into his activities.

5.      By engaging in this conduct and the conduct further described herein, Gillons has engaged, is engaging, or is about to engage in acts and practices that violate Sections 4b(a)(1)(A)-(C) and 4d(a)(1) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6b(a)(1)(A)-(C) and 6d(a)(1) (2012).

6.      Unless immediately restrained and enjoined by this Court, Gillons is likely to continue engaging in the acts and practices alleged in this Complaint, and additional funds he fraudulently obtained may be misappropriated or otherwise dissipated. Accordingly, the CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), to enjoin Gillons' unlawful acts and practices and to compel his compliance with the Act. The CFTC also seeks civil monetary penalties and remedial ancillary relief, including restitution, disgorgement, pre- and post-judgment interest, and such other equitable relief as this Court may deem necessary and appropriate.

## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), which authorizes the CFTC to seek injunctive relief against any person whenever it appears that such person has engaged, is engaging, or is about to engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

2

8.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Gillons transacted business in this District, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

### III.     PARTIES

9.      Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2012)*,* and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2014).

10.     Defendant **Thomas Gillons** resides in Napa County, California.  On or about June 19, 2013, Gillons was suspended from registration with the Financial Industry Regulatory Authority ("FINRA"), a self-regulatory organization responsible for registering securities industry participants, for failure to comply with an arbitration award.  Gillons has never been registered with the Commission as an FCM or in any other capacity.

### IV.     GILLONS' FRAUD

11.     Between at least July 2007 and June 2012, Gillons was a broker registered with FINRA and employed by Morgan Stanley Smith Barney ("Morgan Stanley") or an affiliate.  In July 2012, Morgan Stanley brought an action before FINRA against Gillons for his failure to pay more than $175,000 owed to Morgan Stanley on two promissory notes.  The FINRA arbitrator ruled in Morgan Stanley's favor and ordered Gillons to pay the amounts owed, plus interest.

12.     Gillons failed to pay the arbitration award, and FINRA suspended him from associating with any FINRA member firm in any capacity, effective June 19, 2013.  His suspension has not been lifted.

3

13.     In approximately August 2013, Gillons advised a married couple he knew through church ("Customers A and B") that they should give him $100,000 in funds they had received from the sale of their home, which he said he would trade in a sub-account at "AMP Clearing" held in their names.  He promised Customers A and B that their funds would be safe and that they would receive monthly statements and a return of 12-14%.  He did not disclose to them that he had been suspended by FINRA or that he was not registered as an FCM or in any other capacity with the Commission.

14.     On approximately August 31, 2013, Customers A and B wrote a check to Gillons for $100,000, and he provided them with a signed, handwritten document acknowledging receipt of their funds.  The document further stated, "The purpose of this check is for deposit in AMP Clearing.  The wire will be made on Tuesday September 3rd 2013."  Gillons endorsed the check and cashed it.

15.     However, Gillons did not wire $100,000 into any account at AMP on September 3, 2013.  Instead, in six transactions spread out between September 5, 2013 and December 5, 2013, he transferred approximately $85,830 from his personal bank account to his personal trading account at AMP, including $40,000 on approximately September 5, 2013, $10,000 on approximately October 31, 2013, and $30,000 on approximately December 5, 2013.

16.     Gillons made three deposits into the bank account of Customers A and B between November 2013 and January 2014, telling them it represented their investment return and that he was depositing the funds into their bank account himself because AMP had not yet set up auto-deposit:  a check for $1,000 on November 4, 2013, a check for $2,000 on December 3, 2013, and a check for $1,000 on January 3, 2014.  However, he did not provide Customers A and B with account documents or monthly statements, and neither did AMP.

4

17.     On approximately December 3, 2013, Customer A's mother ("Customer C"), who was also acquainted with Gillons through church, wrote a check to Gillons for $94,000 to be invested in the same way as the funds of Customers A and B.

18.     Although Gillons endorsed the $94,000 check and cashed it, he did not transfer $94,000 from his personal bank account into his trading account at AMP.  Instead, in four separate transactions between March 2014 and July 2014, he transferred only approximately $22,500 from his personal bank account to his personal trading account at AMP, including $1,500 on approximately March 4, 2014, $4,000 on approximately April 30, 2014, $15,000 on approximately May 21, 2014, and $2,000 on approximately July 10, 2014.  He made no further additions to his trading account at AMP, which currently holds no funds.

19.     Accordingly, during the relevant time period, Gillons transferred at most only $108,330 into his trading account at AMP, despite receiving at least $194,000 from Customers A, B, and C.

20.     During the relevant time period, Gillons traded commodity futures contracts in products listed on the Chicago Mercantile Exchange Inc. ("CME") and Chicago Board of Trade ("CBOT") in his trading account at AMP.  During this time, he incurred aggregate trading losses of at least $55,234 in his account.

21.     Gillons misappropriated the remaining $129,766 in funds of Customers A, B, and C and used them for his own personal expenses.

22.     After receiving numerous inquiries from Customers A and B about their funds, in approximately April 2014, Gillons finally met with them and admitted that he had lost his broker license.  He then misrepresented to them that his assets had been frozen by the arbitration proceeding before FINRA, rendering him unable to return their funds.

23.     On approximately May 21, 2014, Gillons made one last deposit into the bank account of Customers A and B, for $5,000.

24.     In approximately August 2014, Gillons promised Customers A and B that he would pay them the rest of their money back as soon as he sold his house.

25.     Other than the $9,000 in deposits that Gillons made into the bank account of Customers A and B, he has failed to return the funds of Customers A, B, and C, despite their numerous written and verbal requests.

26.     On information and belief, Gillons solicited and accepted funds from customers other than Customers A, B, and C for the purpose of trading commodity futures and has misappropriated their funds as well.

## V.      VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

**Violations of Section 4b(a)(1)(A) and (C) of the Act:
Fraud by Misappropriation**

27.     Paragraphs 1 through 26 are realleged and incorporated herein by reference.

28.     Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012), makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person:  (A) to cheat or defraud or attempt to cheat or defraud such other person; (B) willfully to make or cause to be made to such other person any false report or statement, or willfully to enter or cause to be entered for such other person any false record; or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order

or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

29.     Gillons violated Section 4b(a)(1)(A)-(C) of the Act by cheating or defrauding, or attempting to cheat or defraud, or willfully deceiving, or attempting to deceive, prospective and actual customers by, *inter alia*, misappropriating their funds for his own personal benefit and misrepresenting, orally and/or in writing, that he was a licensed broker, that he would trade customer funds in a sub-account in their names, and his reasons for not returning customer funds.

30.     Each act of misappropriating funds for personal benefit and misrepresenting that Gillons was a licensed broker, that he would trade prospective and actual customers' funds in a sub-account in their name, and his reasons for not returning customers' funds, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of Section 4b(a)(1)(A)-(C) of the Act.

## COUNT II

### Violations of Section 4d(a)(1) of the Act:
### Failure to Register as an FCM

31.     Paragraphs 1 through 26 are realleged and incorporated herein by reference.

32.     Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012), defines an FCM, in relevant part, as "an individual, association, partnership, corporation, or trust" that is "engaged in soliciting or accepting orders for…the purchase or sale of a commodity for future delivery" and in connection therewith, "accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."

33.     Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012), makes it unlawful for any person to be an FCM unless such person is currently registered with the Commission as an FCM.

34.     Gillons violated Section 4d(a)(1) of the Act by accepting money from at least three individuals to margin, guarantee, or secure commodity futures trades without being registered with the Commission as an FCM.

35.     Each act of accepting money to margin, guarantee, or secure commodity futures trades without being registered with the Commission as an FCM, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of Section 4d(a)(1) of the Act.

## VI.     RELIEF REQUESTED

WHEREFORE, for the reasons stated above, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers:

A.     Enter an order finding Gillons liable for violating Sections 4b(a)(1)(A)-(C) and 4d(a)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) and 6d(a)(1);

B.     Enter a Statutory Restraining Order without notice and an order of preliminary injunction pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), restraining Gillons, all persons insofar as they are acting in the capacity of Gillons' agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Gillons who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1.     destroying, mutilating, concealing, altering, or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Gillons, including all such records concerning Gillons' solicitation and trading activities, wherever located;

2.      refusing to permit authorized representatives of the CFTC to inspect, when

and as reasonably requested, any books and records, documents, correspondence,

brochures, manuals, electronically stored data, tape records, or other property of Gillons,

including all such records concerning Gillons' solicitation and trading activities,

wherever located; and

3.      withdrawing, transferring, removing, dissipating, concealing, assigning,

pledging, encumbering, disbursing, converting, selling, or otherwise disposing of, in any

manner, any funds, assets, or other property of Gillons, wherever situated;

C.      Enter an order of preliminary injunction requiring Gillons to make an accounting

to the Court of all of his assets and liabilities, together with all funds he received from and paid

to customers and other persons in connection with commodity futures transactions, or purported

commodity futures transactions, including the names, mailing addresses, email addresses, and

telephone numbers of any such persons from whom he received such funds, and all

disbursements for any purpose whatsoever of funds received from customers, including salaries,

commissions, fees, loans, and other disbursements of money or property of any kind;

D.      Enter an order of preliminary injunction requiring Gillons immediately to identify

and provide an accounting for all assets and property that he currently maintains outside the

United States, including, but not limited to, all funds on deposit in any financial institution,

FCM, bank, or savings and loan account held by, under the actual or constructive control of, or

in the name of Gillons, whether jointly or otherwise, and requiring him to repatriate all funds

held in such accounts by paying them to the Registry of the Court, or as otherwise ordered by the

Court, for further disposition in this case;

E.      Enter orders of preliminary and permanent injunction restraining Gillons, all persons insofar as they are acting in the capacity of Gillons' agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Gillons who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1.      engaging in conduct in violation of Sections 4b(a)(1)(A)-(C) and 4d(a)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) and 6d(a)(1);

2.      trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a (40) (2012);

3.      entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2014)) ("commodity options"), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. §1a(47) (2012), and further defined by Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx) (2014), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) (2012) ("forex contracts"), for any personal or proprietary account or for any account in which he has a direct or indirect interest;

4.      having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on his behalf;

5.      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

6.      soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

7.      applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and

8.      acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014);

F.      Enter an order requiring Gillons to disgorge to any officer appointed or directed by the Court, or directly to persons or entities whose funds Gillons received or caused another person or entity to receive, all benefits received, including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

G.      Enter an order directing Gillons to make full restitution, pursuant to such procedures as the Court may order, to every person or entity whose funds Gillons received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act as described herein, and pre- and post-judgment interest thereon from the date of such violations;

H.      Enter an order directing Gillons to pay a civil monetary penalty in the amount of

not more than the greater of:  (1) triple the monetary gain to Gillons for each violation of the Act;

or (2) $140,000 for each violation of the Act, plus post-judgment interest;

I.      Enter an order requiring Gillons to pay costs and fees as permitted by 28 U.S.C.

§§ 1920 and 2412(a)(2) (2012); and

J.      Enter an order providing such other remedial ancillary relief as the Court may

deem necessary and appropriate under the circumstances.

Date: November 19, 2014                         Respectfully submitted,

                                                 /s/Stephanie Reinhart
                                                Stephanie Reinhart, ARDC #6287179
                                                Senior Trial Attorney
                                                U.S. Commodity Futures Trading Commission
                                                525 West Monroe Street, Suite 1100
                                                Chicago, Illinois 60661
                                                (312) 596-0688
                                                sreinhart@cftc.gov

                                                 /s/David Terrell
                                                David Terrell, ARDC #6196293
                                                Senior Trial Attorney
                                                U.S. Commodity Futures Trading Commission
                                                525 West Monroe Street, Suite 1100
                                                Chicago, Illinois 60661
                                                (312) 596-0539
                                                dterrell@cftc.gov

                                                 /s/Scott Williamson
                                                Scott Williamson, ARDC #6191293
                                                Deputy Regional Counsel
                                                U.S. Commodity Futures Trading Commission
                                                525 West Monroe Street, Suite 1100
                                                Chicago, Illinois 60661
                                                (312) 596-0560

/s/Rosemary Hollinger
Rosemary Hollinger, ARDC # 3123647
Deputy Director
U.S. Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0520
rhollinger@cftc.gov